## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SHIYA ANDERSON,

        Plaintiff,

vs.                                                                Civil No. 08-0859 JEC/DJS

GLORI CHAPMAN and CHIEF RAY
SCHULTZ, in their individual capacities,
and the CITY OF ALBUQUERQUE,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff's Motion for Discovery Sanctions and

Memorandum in Support **[Doc. No. 43]** filed on September 29, 2009, and fully briefed on

November 2, 2009.  Pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, Plaintiff

moves the Court for an order imposing sanctions on Defendants for not complying with the

Court's August 26, 2009 Memorandum Opinion and Order (Doc. No. 41).  Specifically, Plaintiff

contends Defendants are not compliant with the Court's order for the following reasons: (1)

Defendants have not produced Defendant Chapman's belt audio tape or the videotape of the

August 12, 2007 incident that occurred at the Albuquerque's Police Department Prisoner

Transport Unit (hereinafter "Alvarado Detention Center"); (2) Defendants have not produced

documents relating to any incidents and allegations of excessive force, physical abuse, assault

and battery at the Alvarado Detention Center between 2004 and 2007, as well as documents

relating to all investigations into such incidents; and (3) Defendants have not produced any

documents in response to Request for Production No. 26.

## I.  Factual and Procedural Background

Plaintiff brings this action pursuant to 42 U.S.C. §1983, alleging Defendant Chapman violated her First and Fourth Amendment rights under the United States Constitution.  Compl. ¶4.  Plaintiff also alleges Defendant Chapman violated the New Mexico Tort Claims Act.  *Id.* Plaintiff alleges that on **August 12, 2007**, she was at Graham Central Station in Albuquerque and became intoxicated.  Compl. ¶9.  At approximately 1:00 a.m., the bouncer escorted her outside and called a taxi for her.  *Id.*  While they were waiting, Plaintiff argued with the bouncer and shoved him.

Sergeant Heh, an Albuquerque police officer working "Chief's overtime" that night, witnessed the incident.[1]  Sergeant Heh arrested and handcuffed Plaintiff.  *Id.* ¶ 10.  The officer sought assistance from a second officer also doing "Chief's overtime" at Graham Central Station.  The two officers placed Plaintiff in a police car and called for an additional police car to transport Plaintiff to the Alvarado Detention Center.  *Id.* ¶¶ 12,13.  Plaintiff contends she was sufficiently intoxicated to be uncooperative with the officers, but she did not pose a threat to them.  *Id.* ¶12.

When Defendant Chapman arrived, the officers transferred Plaintiff to Defendant Chapman's police car.  Sergeant Heh noted in his report that he "balled up" Plaintiff's long hair in order to effectuate the exchange of handcuffs.  *Id.* ¶15.  Sergeant Heh also noted in his report that Plaintiff did not have any injuries at the time he placed her in the custody of Defendant Chapman.  *Id.*  Plaintiff contends Sergeant Heh was in a position to see and report any injuries to

---

[1] According to Plaintiff, officers working "Chief's Overtime" conduct all the normal duties of Albuquerque Police Department officers while stationed at private establishments. Compl. ¶10.

her head, neck or ears when he lifted her hair and "balled it up behind her."  Compl. ¶15.

Defendant Chapman transported Plaintiff to the Alvarado Detention Center at approximately

1:45 a.m.  During the transport, Plaintiff talked a great deal and complained about her arrest and

having her cell phone taken away.  Plaintiff also repeatedly asked Defendant Chapman to allow

her to call her boss.  Defendant Chapman denied Plaintiff's repeated requests.  *Id.* ¶16.

At approximately 2:10 a.m., Defendant Chapman arrived at the Alvarado Detention

Center and removed Plaintiff from her police car and escorted her inside.  Once inside,

Defendant Chapman removed Plaintiff's handcuffs and directed her to fill out some forms at the

front desk of the detention center.  *Id.* ¶17.  While Plaintiff was filling out the forms, Plaintiff

made some statements that angered Defendant Chapman.  Defendant Chapman reacted by hitting

Plaintiff on the left side of her head with her nightstick.  *Id.* ¶18.  Plaintiff suffered a gash to her

left ear.

Defendant Chapman handcuffed Plaintiff and sat her in the booking area to await further

processing.  An officer at the detention center noticed Plaintiff was bleeding from her left ear

and told Defendant Chapman to take Plaintiff to the emergency room for treatment.  *Id.* ¶21.

Defendant Chapman transported Plaintiff to the emergency room at Lovelace where she received

treatment for her injuries.[2]  *Id.* ¶22.

On **August 27, 2007**, Plaintiff's counsel sent a letter to Defendants requesting

information regarding the **August 12, 2007** incident.  Pl.'s First Mot. Compel; Ex. 5.  Counsel

advised the recipient of the letter that "there should be videotape at the holding facility of

[Plaintiff's] entire time there, including when and how she sustained injuries to the side of her

---

[2] Plaintiff was treated at a nearby emergency room.  The gash to the left ear required four
sutures.  Pl.'s First Mot. Compel; Ex. 6.

head." *Id.*   Counsel also requested the videotape and "any and all reports and documents related

to Ms. Anderson's arrest and injury." *Id.*

On **September 26, 2007**, Defendant submitted her report of the August 12th incident.  In

her report, Defendant Chapman noted Plaintiff yelled obscenities at her the entire time she was

transporting Plaintiff to the detention center and while Plaintiff was filling out her forms.

Defendant Chapman reported Plaintiff said "something that I perceived was a personal attack

and I reacted by hitting her under her chin and again told her to be quiet." *Id.*

In her police report, Defendant Chapman also noted, in relevant part:

> During inventory at PTC, the transport officers (unidentified) moved aside her very
> straight and long dark hair and saw that Shiya had blood on the inside of her left ear.
> The blood appeared partially dried and was crusty.  Shiya would not tell us how she
> got the injury or even when it happened.  Once transport officers agreed that she
> needed medical attention before booking, Shiya began stating that she needed to see
> a doctor.  PTC officers escorted her to my vehicle and I took her to Lovelace hospital
> downtown (MLK).  The entire trip Shiya yelled at me to call her boss and repeated
> obscenities at me.  I arrived on the east side of the hosp. And waited to be admitted,
> but no one answered the door buzzer.  After only a few moments, I directed Shiya
> to get back in my vehicle and we would drive around to the north side.  Once in my
> car, Shiya began quietly telling me she need[ed] to see a doctor and asking me, "why
> won't you let me see a doctor?"  7-8 times, I patiently told her that we were at the
> hospital for her, but she continued with, "why won't you let me see a doctor?" and
> "why won't you get me to a doctor?"  While in the parking lot, an unidentified male
> driver flagged me down for directions.  Shiya banged her head against the seat guard
> and screamed at me to 'get going'!!!  I was unable to give the driver directions due
> to Shiya's behavior and terminated his conversation immediately (he was from out
> of town and was lost).

Pl.'s First Mot. Compel; Ex. 3.

On September 22, 2008, Plaintiff filed this action.  The Court entered its Scheduling

Order on March 25, 2009 (Doc. No. 21).  On April 20, 2009, Defendants City of Albuquerque

and Schultz filed an Opposed Motion to Extend Time to Respond to Discovery (Doc. No. 24).

On April 21, 2009, the Court granted the motion, granting Defendants a one week extension to

respond to discovery (Doc. No. 25).  On May 20, 2009, Plaintiff filed an Unopposed Motion to

Extend Rule 26.6 Deadline (Doc. No. 29).  The Court granted the motion on the same day (Doc.

No. 31).  On June 5, 2009, the Court entered a Stipulated Protective Order (Doc. No. 32).

On June 24, 2009, Plaintiff filed her First Motion to Compel Discovery and

Memorandum in Support (Doc. No. 33).  In that motion, Plaintiff moved for an order compelling

Defendants to produce, *inter alia*, Defendant Chapman's belt audio tape and the video tapes of

the alleged "attack" on Plaintiff by Defendant Chapman while Plaintiff was being processed at

the Alvarado Detention Center.  Plaintiff also sought (1) all documents relating to all incidents

and allegations of excessive force, physical abuse, assault and battery at the Alvarado Detention

Center between 2004 and 2007 and (2) all documents relating to any discipline and training

ordered as a result of similar court cases involving police abuse at Alvarado Detention Center.

Pl.'s First Mot. Compel; Ex. 1, RFP Nos. 1, 2, 6, 18, 19 and 26.

On August 26, 2009, the Court entered its Memorandum Opinion and Order (Doc. No.

41) granting in part and denying in part Plaintiff's motion to compel discovery.  The Court

ordered production of the requested documents within 10 days of the filing of the Court's order.

As to the Requests for Production that are at issue in the instant motion, the Court ordered

Defendants to (1) produce Defendant Chapman's belt audio tape or provide an explanation as to

why they couldn't produce it, (2) provide an explanation to the Court as to what steps they had

taken to locate the Alvarado Detention Center video tapes of the August 12th incident, and (3)

produce the requested documents sought in Requests for Production Nos. 18 and 19.

On September 29, 2009, Plaintiff filed the instant motion, asserting Defendants failed to

comply with the Court's August 26, 2009 order.  Plaintiff claims Defendants failed to produce

Defendant Chapman's belt audio tape and the Alvarado Detention Center videotape of the

August 12, 2007 incident.  Additionally, Plaintiff claims that in response to Requests for Production Nos. 18 and 19, Defendants "produced a 57-page list of a seemingly random assortment of claims lodged against the entire Albuquerque Police Department for a multi-year period."  Pl.'s Mot. Discovery Sanctions at 4.  In its August 26 order, the Court directed Defendants Schultz and City of Albuquerque to produce the requested documents but narrowed the request to a shorter time frame, 2004 to 2007, and only as to similar incidents.  Memorandum Opinion and Order at 8.

Defendants Schultz and City of Albuquerque admit they did not respond to Request for Production No. 26.  However, they contend it was an oversight on their part, and they intend to respond to Request for Production No. 26.[3]  As to Defendant Chapman's belt audio tape and the Alvarado Detention video tape, Defendant Schultz and City of Albuquerque contend that Defendant Chapman never placed the belt audio tape into evidence.  Therefore, it is not in their possession.  Moreover, Defendants claim "the entire Internal Affairs file . . . does not reference any videotapes of the [August 12, 2007] incident."  Defs. Schultz and City of Albuquerque Resp. at 2.  However, Defendants Schultz and City of Albuquerque agree to supplement their response and provide greater detail as to the camera system and will provide an affidavit from Defendant Shultz as to whether or not he reviewed videotapes as part of his review of the Internal Affairs Investigation.  *Id.* at 3.

Finally, Defendants Schultz and City of Albuquerque claim they complied with the Court's order as to information regarding misconduct at the Alvarado Detention Center. Defendants claim that, at the suggestion of Plaintiff's counsel, they produced the Internal Affairs

---

[3] According to Plaintiff, Defendants Schultz and City of Albuquerque have not produced these documents as of November 2, 2009.  Pl.'s Reply at 6

files produced in the *Bell* case.  Counsel for Plaintiff were also counsel in the *Bell* case.
Defendants contend these documents are completely responsive to Plaintiff's request.
Nonetheless, Defendants contend they "will supplement their discovery responses to specify
what has been produced" and "highlight the tort claim notices relating to the [Alvarado
Detention Center]."  Defs.' Resp. at 4.

Defendant Chapman also filed a response to Plaintiff's motion for discovery sanctions,
asserting Plaintiff has not sought any discovery from her.  Specifically, Defendant Chapman
contends Plaintiff has never sought the belt audio tape from her and claims she does not have it
to produce.  Defendant Chapman also contends Plaintiff's motion fails to distinguish against
whom sanctions are sought, her or Defendants Schultz and City of Albuquerque.  Defendant
Chapman argues that the imposition of sanctions against her would not be warranted as Plaintiff
has never requested any discovery from her.

Plaintiff counters that Defendant Chapman and the other Defendants are functionally the
same entity.  Hence, Plaintiff contends all Defendants had a duty to preserve and produce the
belt audio tape.  Plaintiff contends there is also evidence showing Defendants Chapman, Schultz
and the City of Albuquerque had possession of the video tapes as they were viewed by an
Albuquerque Police Department Lieutenant and then turned over to the Internal Affairs division
that was investigating Defendant Chapman's assault of Plaintiff.  Plaintiff claims this occurred
after Defendants were given notice to preserve this evidence.  Additionally, Plaintiff asserts that
Defendant Chapman knew she used force against a civilian and was being investigated for this
incident, yet she apparently failed to preserve the audio evidence of her assault, making it
impossible for Defendant City of Albuquerque to turn over the belt audio tapes in discovery.

## II.  Discussion

Pursuant to Rule 37 of the Federal Rule of Civil Procedure, Plaintiff seeks sanction against Defendants for what she perceives as discovery abuses.  Rule 37(b)(2) authorizes the court to impose various sanctions upon a party for failure to comply with "an order to provide or permit discovery," including: (i) ordering that the matters at issue be taken as established; (ii) precluding the noncompliant party from supporting or opposing the matters at issue; (iii) striking the relevant pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action in whole or part; (vi) rendering a default judgment against the noncompliant party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.  FED.R.CIV.P 37(b)(2).  Plaintiff also moves the Court for reasonable expenses, including attorney's fees pursuant to Rule 37(b)(2)(C).

The Court's "discretion to choose a sanction is limited in that the chosen sanction must be both just' and related to the particular claim which was at issue in the order to provide discovery."  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)(internal citations omitted).  Moreover, dismissal is an appropriate sanction only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.  *Id*.  at 921.

In this case, Plaintiff contends sanctions are appropriate because Defendants failed to comply with the Court's August 6, 2009 order and because Defendants Schultz and City of Albuquerque have engaged in a pattern of discovery abuses in other abuse and excessive force cases and this behavior must be deterred.  Plaintiff contends Defendants Schultz and City of Albuquerque have engaged in similar conduct in a host of federal and state cases, including: *Canizales v. Albuquerque Police Dep't, et al.*,  Civ. No. 07-198 JB/RHS; *Graham v. Kenny, et al.*, 07-258 MCA/DJS; *Chavez v. City of Albuquerque*, Civ. No. 07-476 JCH/RHS; *Resenberg v.*

8

*City of Albuquerque, et al.*, No. D-202-CV 2007-01343; and *Bell v. City of Albuquerque and Albuquerque Police Dep't*, No. CV-2008-00958.

Plaintiff also argues sanctions are appropriate because she has been prejudiced by Defendants' discovery abuses.  Plaintiff contends that, in the absence of the video and audio tapes, she is denied evidence that would have confirmed her version of the facts, i.e., Defendant Chapman clubbed her in the head with an asp or nightstick while she completed paperwork at the Alvarado Detention Center.  Moreover, Plaintiff contends she is prejudiced in her effort to establish municipal liability by Defendants' refusal to produce (1) the complaints and investigative documents and (2) the discipline and training documents regarding similar instances of police abuse at the Alvarado Detention Center.

Plaintiff requests the Court impose the following sanctions: (1) that the facts as alleged in Plaintiff's Complaint regarding Defendant Chapman clubbing Plaintiff in the head with an asp or nightstick while Plaintiff filled out paperwork at the Alvarado Detention Center be taken as established for the purposes of this action and any argument or testimony to the contrary be disallowed; (2) that municipal liability be established as to Defendant City of Albuquerque regarding Defendant Chapman's acts described above and any argument or testimony to the contrary be disallowed; (3) that Defendants reimburse Plaintiff for her attorneys' fees and costs related to the filing of the Motion to Compel Discovery and the instant motion; (4) that a monetary sanction determined by the Court be awarded to Plaintiff; and (5) that the Court hold Defendants in contempt for their violation of the Court's August 26, 2009 order.

Defendant City of Albuquerque argues that the Court should not sanction it by finding municipal liability as this would be tantamount to granting Plaintiff summary judgment on the municipal liability issue.  Defendant City of Albuquerque proposes it submit the Internal Affairs

investigation of this matter to the Court for its review prior to making any ruling.   Defendant

Chapman contends no sanctions are warranted as to her since Plaintiff has not sought any

discovery from her.

       The Court will set this matter for hearing.  Defendant City of Albuquerque shall submit

the Internal Affairs investigation of this matter to the Court within five (5) days of the filing of

this Memorandum Opinion and Order.  The Court will hear this matter on January 28, 2010, at

10:30 a.m., in chambers, located on the second floor courtroom of the Federal Courthouse at 421

Gold Ave., SW, Albuquerque, New Mexico.

       **IT IS SO ORDERED.**

_____

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**